# Jackson's Estate.

*Will—Construction—Devise to life tenant—Obligation imposed on trustee to pay for repairs.*

A devise to the widow for life unhampered by any condition that she should occupy the premises as a residence unless it becomes uninhabitable, and imposing on the trustees the duty of paying for the repairs of the property, makes them liable to pay for such proper and reasonable repairs made by the life tenant as a prudent man managing his own property and having the ability would make.

Argued Oct. 3, 1900.　Appeal No. 225, Oct. T., 1899, by

Benjamin D. Shreve and A. Lewis Smith, executors and trustees of William Jackson, deceased, from decree of O. C. Phila. County, April T., 1893, No. 585, dismissing exceptions to adjudication. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.   Per Curiam.

Exceptions to adjudication by PENROSE, J.   Before the court in banc.

The facts sufficiently appear from the following adjudication of the auditing judge :

The decedent died May 16, 1892.   The provisions of his will and the facts with regard to his family and estate are set forth in the adjudication, filed July 7, 1893, of the account of his executors, by which, after awarding payment of legacies, etc., presently payable, the residue of the estate was directed to be retained by the executors in trust for the purposes of the will and codicil (proved May 26, 1892), the surplus income, during the continuance of the trust, being given to the children of the testator, viz: Mary C. Clothier, Elizabeth J. Shreve, Caroline J. Lytle (children by a previous marriage), and William Jackson, Jr., a minor, of whom he appointed his wife, Mrs. Mattie C. Jackson, mother of the minor, guardian, the residue being charged also with the payment of certain annuities as in said will set forth.

A second account was filed in June, 1895, for the purpose, as stated in the adjudication, filed July 9, 1895, " of having a question determined with regard to payment of taxes, etc., upon property specifically devised to the widow, Mrs. Mattie Jackson," viz : whether " the will contemplated a personal occupation by the widow, and the direction for payment of taxes, repairs and annual charges, was conditioned by implication upon such occupancy."   It was held by that adjudication that such personal occupancy was not intended by the will, and that the duty of the executors and trustees to pay taxes, repairs and annual charges, was not conditioned upon such occupancy. There were no exceptions to this ruling.

The question is again raised by the trustees with regard to the account now before the court, the parties being precisely as they were when it was decided more than four years ago. It may be doubted whether the doctrine of Kline's Appeal,

86 Pa. 363, and Guenther's Appeal, 4 W. N. 41, that "a decree making a partial distribution of the funds of an estate is conclusive only as to the funds then distributed," is applicable to a decision of the court with regard to the duty of a trustee, in the management of the estate, under the provisions of the will creating the trust; it certainly will be productive of inconvenience and annoyance if the court is compelled to repeat its decision in this respect every time the trustee sees fit to file a new account. See Tyson's Estate, 191 Pa. 218. Assuming, however, that the question is still an open one, so far as the present account is concerned, the auditing judge adheres to the views originally expressed in the adjudication of July, 1895.

By an antenuptial agreement between the decedent and his subsequent wife, Mrs. Mattie C. Jackson, it was provided, inter alia, that "she shall be entitled to the occupancy for a period of three years after his decease, of the dwelling house in which he shall reside at that time, clear of rent, and further that taxes and all current charges against the said premises during said term of three years, as well as the repairs thereof shall be paid out of the income of his other estate."

By the thirteenth clause of the will it was provided that "I ratify and confirm the antenuptial agreement executed by and between my wife, Mattie C. Jackson, and myself, dated the 30th day of June, 1890."

The fourteenth clause is as follows: "I give and devise to my beloved wife during her natural life or until her remarriage the dwelling house, No. 1906 Chestnut street, in the city of Philadelphia, and I direct that all taxes, water rents, repairs and current charges of and against the same shall be paid by the trustees of my residuary estate out of the income from said estate, or after the time of the division of said estate out of the income of the reserved fund of thirty thousand dollars, hereinafter provided; said trustees shall maintain the insurance on said dwelling house and in case it shall become untenantable by reason of fire or otherwise, the said trustees shall provide another residence for my said wife, either by purchase or rental as may be satisfactory to her and most beneficial for the interests of my estate. Upon the death or remarriage of my said wife said premises and any that may have been purchased in lieu thereof shall become part of my residuary estate."

The residuary estate is given to the trustees, "subject to the several powers, provisions and limitations hereinafter expressed," to collect the income, etc., and "after payment of taxes, repairs and all other proper charges and expenses," to divide the net income after payment of annuities, etc., among his said children, etc.

Mrs. Jackson removed from the property thus given to her, some time before the filing of the account of 1895, and since September 1, 1894, it has been rented to a tenant, Mary A. McIntyre, at a monthly rent of $108.34, payable in advance, the tenant covenanting to do all "necessary repairs" this, however, not "to include permanent repairs, or such as must be made by the trustees under the will of William Jackson, deceased."

Though the account contains some credits for repairs and annual expenses of this property since it was thus rented, it is again said that the duty to pay only exists in case of the personal occupancy by Mrs. Jackson, and objection is made to the allowance of payments made by her for such repairs, and to claims presented by persons employed by her of the same character.

The sole ground, as the auditing judge understands, of this objection, is the provision in the will that "in case it shall become untenantable by reason of fire or otherwise, the said trustees shall provide another residence for my said wife, either by purchase or rental, as may be satisfactory to her and most beneficial for the interests of my estate." The devise is to the wife, for life or during widowhood. It is in lieu of her rights under the intestate law, and is, therefore, to be construed favorably to her. So far as concerns the right of the persons to whom the property goes in remainder, it can make no difference whether it is occupied by her or by her tenant; nor can it make any difference to the estate of the testator during the continuance of her life estate. Had the will been silent as to taxes, repairs, etc., it would have been the duty of Mrs. Jackson, as tenant for life, to pay all such charges, so that the property should go to those entitled in remainder clear of liens created or suffered by her, and in good tenantable condition. The sole purpose of the testator was to relieve her of this burden. Even if the will had declared in terms that the property was for her "occupancy," it is not clear that she could not have rented it,

by analogy to the cases which have decided that a gift of money for a specified purpose may be used by the legatee for any other purpose: Beck's Appeal, 46 La. 527; Williams on Executors, 1397. In Beck's Appeal, an annuity was given to the widow of the testator "for house rent," and it was contended that as she did not keep house, she was not entitled; but it was said by the court: "These words create neither a condition nor a trust, and do not give the executors the slighest power over the legacy." But the will does not so declare. The provision is purely for the benefit of the widow, and was not intended to be a restraint imposed upon her ownership. An estate for life is alienable, and while the right of alienation is not, as in the case of an estate of inheritance, an inseparable incident, it will not be withheld in the absence of clear evidence in the deed or will creating the life estate of intention to withhold it.

[The will creates no trust with regard to this property. It is devised directly to the widow of the testator, and the trustees have no right to interfere in any way with it. Nor is any discretion vested in them with regard to taxes, repairs, etc. Their duty is simply "to pay," to pay "all" taxes, water rents, "repairs and current charges." The testator has said that these "shall be paid" by the trustees, and in making such payment, their only duty is to see that moneys of the estate are not applied for any other than the designated purposes,] [2]

As the will relieves Mrs. Jackson from all obligation with regard to taxes, repairs, etc., she has the right in renting the property to obtain any benefit that may arise by reason of the provision, tenants, of course, being willing to pay higher rent if relieved of the ordinary duty to keep the premises in repair.

The property is a valuable one, though old and naturally calling for repair. The taxes for 1899 were $422.87. Taxes for the same year on No. 1014–1016 Walnut street, belonging to the residuary estate, were $888.38, somewhat more than double.

[The claims for repairs were as follows:

| | |
|---|---:|
| Harry C. Mellor, plumber, replacing water-closet | $59 05 |
| Hoffmeister & Co., repairing heater . . | 4 10 |
| J. Kisterbock & Son, repairing . . . | 28 35 |
| William Miller, painting bathtub . . | 5 00 |
| Amount carried forward . . . | $96 50 |

238, (1900).]     Adjudication—Assignment of Errors.

| | | |
|---|---|---|
| Amount brought forward . . . | $96 | 50 |

Mrs. Mattie C. Jackson, amounts paid, viz:

| | | |
|---|---|---|
| John Kelly, cleaning marble work . . | 15 | 00 |
| Kayser & Allman, painting . . . . | 35 | 00 |
| Kayser & Allman, painting . . . | 15 | 00 |
| R. W. Strode & Son, carpenter work . . | 13 | 07 |
| | $174 | 57] [4] |

[The testimony before the auditing judge showed that these repairs were entirely proper.] [3]   They were made during a period of over four years, and with the amounts credited in the account for repairs of this property, make only $      , which certainly cannot be considered unreasonable for a property of this character.   The account shows that in February, 1898, $504.46 were paid for new water-closets and bathtub at No. 1014 -1016 Walnut street, $145.46 for painting, $25.75 and $16.50 for plastering, and all this in a single year.

The balance of principal shown by the account, composed as there indicated, is $86,489.66, which will be held by the accountants for the purposes of the trust.

Exceptions were filed to this adjudication, which were dismissed by FERGUSON, J., the court filing no opinion, the decree being as follows:

And now, December 2, 1899, it is ordered and decreed that the exceptions filed in this case be dismissed and the adjudication confirmed.   Trustees appealed.

*Errors assigned* among others were (1) in dismissing appellants' first exception, which was as follows: " Because the learned judge finds that the exceptants are liable for the taxes, repairs, etc., of premises No. 1906. Chestnut street, although the same be not in the occupancy of Mrs. Mattie C. Jackson, but in the occupancy of her tenant, and used by such tenant for purposes involving greater expenditures than if said premises were used as a residence."   (2, 3) To portions of the adjudication of the auditing judge, reciting same.   (4) Because the learned judge awarded payment of the claims amounting to $174.57.   (5) In entering decree of December 2, 1899, dismissing appellants' exceptions and confirming the adjudication.

*L. L. Smith,* for appellants.—The effect of the adjudication

is that the trustees must pay any claims which Mrs. Jackson in her discretion may choose to submit to them, provided only that the claims are for work done on the house. It is submitted with great respect that this is clearly erroneous.

The repairs allowed by the auditing judge are in themselves improper. If the testator did contemplate that Mrs. Jackson might rent the house, it is but fair to assume that he considered that it would be done under ordinary conditions, namely, that the tenant should make the repairs. If Mrs. Jackson chooses to rent under usual conditions, the fault is hers. The testator never contemplated that she should make the estate pay her an unfair rent, and yet that is what it amounts to. If she is entitled to the rent of the house, she is entitled to but a fair rent. If she adopts extraordinary methods to gain a higher rent, she must bear the extraordinary expense thereby occasioned. It is not fair to put it on the estate. The repairs, if proper at all, were such as any ordinary tenant should make.

*Edmund Randall,* with him *James A. Flaherty,* for appellees.

PER CURIAM, October 22, 1900:

We think it clear that the devise to the testator's widow for life was unhampered by any condition that she should occupy the premises as a residence unless they became uninhabitable. Nor did the will create any trust with regard to the property. The fact that the will imposed on the trustees of the residuary estate the duty of paying for the repairs of the property directly devised to the widow does not, as is contended by them, warrant the conclusion that the discretion as to what repairs are proper rests primarily with them. We do not say that it is their duty to pay for every substantial alteration of the building, or for all unnecessary and extravagant repairs that the life tenant may see fit to make. It is not necessary to discuss that extreme proposition in this case. It is sufficient to say, and as to that we are clear, that for such proper and reasonable repairs made by the life tenant as a prudent man managing his own property, and having the ability, would make, it is their duty to pay. The repairs made by the widow for which payment was allowed appear to have been of that character. We therefore think there was no error in the decree. The reasons given by the

238, (1900).]                    Opinion of the Court.

learned auditing judge fully sustain his conclusion, and further discussion by us is unnecessary.

The decree is affirmed and the appeal dismissed at the costs of the appellants.